UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:17-cr-00235-KJM |
| Plaintiff, | ORDER |
| v. | |
| Edward Charles Gaston, | |
| Defendant. | |

Defendant Edward Gaston pled guilty to distributing methamphetamine. A mandatory minimum sentence applies to offenses involving 50 grams or more of "actual" methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii). Mr. Gaston argues he did not admit to distributing 50 grams of actual methamphetamine; the government contends he did. The court provided its tentative ruling at hearing with the parties on April 25, 2022. At that hearing, Alexis Klein represented the government and Shari Rusk represented Mr. Gaston who appeared in-person and in custody. As the court explains in this order confirming its tentative ruling, Mr. Gaston is correct in light of binding Ninth Circuit case law.

**I.      BACKGROUND**

In the summer of 2016, a confidential government informant arranged to buy eight ounces of methamphetamine from Mr. Gaston in a Home Depot parking lot. Plea Tr. at 24–25, ECF No. 84. A surveillance team watched as Mr. Gaston sold something in a brown paper sack to the

1

1   informant for $2,200.  *See id.* at 25.  The DEA later tested the bag's crystalline contents.  *Id.*  It

2   contained about 220 grams of methamphetamine—almost eight ounces, as promised.  *Id.*

3        Sixteen months later, in December 2017, a grand jury charged Mr. Gaston with knowingly

4   and intentionally distributing "at least 50 grams of methamphetamine (actual)" in violation of the

5   Controlled Substances Act.  Indictment at 1, ECF No. 9.  The Controlled Substances Act

6   criminalizes the knowing and intentional distribution of controlled substances, including

7   methamphetamine.  21 U.S.C. § 841(a)(1); *see also id.* § 812 sched. II(c).  If a violation involves

8   50 grams of methamphetamine or more, then the law imposes a mandatory prison term of ten

9   years to life.  *See id.* § 841(b)(1)(A)(viii).  By contrast, if the drug is a "mixture or substance

10  containing a detectable amount of methamphetamine," the ten-year minimum is mandatory only

11  for violations involving 500 grams or more.  *Id.*  Violations involving smaller quantities are

12  subject to lower or no minimum prison terms.  *See id.* § 741(b)(1)(B)(viii), (b)(1)(C).  The

13  indictment against Mr. Gaston included a charge based on an unnamed previous drug conviction

14  he allegedly suffered.  Indictment at 1.  At the time of the indictment, given the

15  methamphetamine charge, his prior meant he faced a prison term of twenty years to life.  *See id.*

16  at 4 (penalty slip); *cf.* First Step Act of 2018 § 401(a)(2)(A), Pub. L. No. 115-391, 132 Stat. 5194

17  (amending minimum prison terms in § 841(b)(1)).

18        Mr. Gaston pled not guilty.  Mins., ECF No. 12.  Efforts at negotiating a plea agreement

19  proved unsuccessful, *see* Mins., ECF Nos. 21, 22, and Mr. Gaston believed the government had

20  wrongly withheld recorded conversations between himself and the informant, *see* Def. Mem. at

21  1–2, ECF No. 118; Mot. Discovery at 3–4, ECF No. 99.  After the court extended several pretrial

22  deadlines, he moved to dismiss the indictment, citing the intervening First Step Act, which

23  prevents some previous drug convictions from leading to the higher mandatory minimum prison

24  sentences.  *See* Min. Orders, ECF Nos. 26, 28, 30, 32, 34; Mot. Dismiss, ECF No. 38.  In

25  response, the government agreed to strike references to his previous conviction from the

26  indictment, and Mr. Gaston informed the court he was considering whether to change his plea to

27  guilty.  *See* Opp'n, ECF No. 44; Mem., ECF No. 45.  The court scheduled a change-of-plea

28  hearing.  Min. Order, ECF No. 46.

That hearing went forward in April 2019. *See* Mins., ECF No. 47; Plea Tr., ECF No. 84. The court accepted the government's proposal to strike the reference to Mr. Gaston's previous convictions from the indictment and denied Mr. Gaston's motion to dismiss. Plea Tr. at 2–4. According to the prosecution, this meant Mr. Gaston was now facing a prison sentence of ten years to life. *Id.* at 5. His counsel agreed with that assessment, and Mr. Gaston confirmed that he intended to change his plea to guilty without a plea agreement, a so-called "open" plea. *See id.* at 4–5. The court then began asking him the questions required by Federal Rule of Criminal Procedure 11 to ensure his decision was knowing and voluntary.

Among other topics during the plea colloquy, the court reviewed with Mr. Gaston the potential penalties he was facing, including the ten-year statutory minimum prison term that applies to violations involving 50 grams of actual methamphetamine or more:

> The Court: In terms of the penalties associated with the charge, given the striking of the prior from the indictment, they are as follows: Based on the statute a mandatory minimum of 10 years up to life, a fine of up to $10 million or both fine and imprisonment, a term of supervised release following incarceration of at least 5 years up to life. There's also a mandatory $100 assessment. Do you understand those are the penalties and that's the assessment associated with the charge?
>
> The Defendant: You're not saying I'm going to owe $10 million, right?
>
> The Court: I'm saying Congress has provided that when I get to sentencing, if I get there, that there could be a fine up to $10 million, and so there's—there is a mandatory minimum period of incarceration of 10 years up to life. And then I can also consider at sentencing whether or not I impose a fine of up to $10 million.
>
> The Defendant: Okay.
>
> The Court: Or there can be a fine and imprisonment. But at this point it would appear that the 10-year mandatory minimum, unless there's a government motion, that would—that would apply here. . . .
>
> Sentencing occurs in the future, and I'll talk more about that in a bit, but I'm just telling what you [sic] Congress has provided.

/////

3

1      The Defendant: Yeah, I understand, Your Honor.

*Id.* at 15–16.

Before finally and formally asking Mr. Gaston if he was in fact changing his plea to guilty, the court asked the government to explain what it would have to prove if the case went to trial. *Id.* at 21. The prosecutor described a two-part burden:

> Your Honor, if this case went to trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which Mr. Gaston is pleading guilty: As to the sole count of the indictment, first, on or around August 11, 2016, Mr. Gaston knowingly distributed at least 50 grams of actual methamphetamine, a schedule 2 controlled substance; and second, Mr. Gaston knew that the substance he was distributing was methamphetamine or some other federally controlled substance.

*Id.* at 21–22. At the request of Mr. Gaston's attorney, the prosecutor repeated these elements:

> The first element is that on or around August 11 of 2016, Mr. Gaston knowingly distributed at least 50 grams of actual methamphetamine, and methamphetamine is a Schedule II controlled substance under the Controlled Substances Act.
>
> The second element is that at the time Mr. Gaston knew that that substance that he was distributing was methamphetamine or some other prohibited substance.

*Id.* at 22. Mr. Gaston was careful to confirm his understanding of what he had just heard; in response, the prosecution, Mr. Gaston's counsel, and the court agreed the amount and specific identity of the controlled substance were not elements for the government to prove:

> The Court: All right. So you do understand that those are the elements that the government would have to prove if you went to trial?
>
> The Defendant: Yes, not that I knew it was actual, but I knew it was drugs.
>
> The Court: All right. Anything to say about that, Mr. Delgado [the prosecutor]?
>
> Mr. Delgado: Your Honor, the actual—the actual, whether it's actual or a mixture of substance, that bears on the sentencing that would be imposed. But in terms of the knowing distribution of the substance, I think that goes to the core of the elements prescribed by Congress.

4

|   |   |
|---|---|
| | Whether it's, as they say, actual or a mixture of substance, that bears on the sentence that will be imposed, but it's not one of the elements of the substantive offense itself. |
| | The Court: So Mr. Gaston's statement just now doesn't undermine the element as you've articulated? |
| | Mr. Delgado: I agree, Your Honor. |
| | The Court: All right. The Court believes that's correct. |
| | Anything to say, Ms. Wirsching [defense counsel]? |
| | Ms. Wirsching: No. I just advised him that the Court—that they would not have to prove that he knew it was actual meth, just that it was meth or some other illicit substance. |
| | The Court: All right. |
| | Mr. Delgado: Agree, Your Honor. |
| | The Court: And you understand that's the way the element would be established at trial if the government could meet its burden? |
| | The Defendant: Yes, Your Honor. |

*Id.* at 22–23.

Mr. Gaston also agreed with the government's description of the factual basis for his plea, i.e., that he sold a half pound of methamphetamine to a government informant for $2,200. *See id.* at 24–26. That included the results of the government's post-sale tests on the contents of the brown paper sack:

> Mr. Delgado: . . . [T]he confidential source gave that brown paper bag to his or her FBI handlers. Inside was the suspected half pound of crystal methamphetamine. The crystalline substance that Mr. Gaston sold to the confidential source was later tested at the DEA's laboratory and found to contain 217.7 grams of actual methamphetamine.
>
> The Court: So Mr. Gaston, did you hear all of that?
>
> The Defendant: Yes, Your Honor.
>
> The Court: Do you agree that that accurately states what happened and to the extent it describes what you did, it accurately states what you did?

1     The Defendant: Yes, Your Honor.  It accurately states what I did.

2     The Court: All right.  And you otherwise agree with that statement
3     of facts?

4     The Defendant: Yes, Your Honor.

*Id.* at 25–26.  Mr. Gaston then confirmed his guilty plea formally, which the court accepted.  *Id.* at 26–27.

Later, the parties' discovery dispute was resolved in motion practice before a magistrate judge, and the court set a sentencing hearing.  *See* Min. Order, ECF No. 115.  Mr. Gaston's sentencing memorandum, filed in advance of that hearing, included arguments on the statutory sentencing range and an alternative motion to withdraw his guilty plea.  *See* Mot. Withdraw, ECF No. 118.  The relief he requests and his arguments in favor of that relief are somewhat complicated, and his position has evolved, but the essentials are straightforward: he contends he pleaded guilty to distributing a controlled substance, not that he distributed any specific quality or quantity of methamphetamine, and therefore faces no mandatory minimum sentence.  *See generally* Def.'s Suppl. Br., ECF No. 128.  If the court disagrees, he asks to withdraw his plea.  *See* Reply at 5, ECF No. 124.  In the alternative, he contends he was entrapped in a sale of more than 50 grams of actual methamphetamine and asks the court to remedy the entrapment by imposing a sentence below the statutory minimum.  *See* Def.'s Mem. at 5–8, ECF No. 118; Reply at 5–6.  The government disagrees on each point.  *See generally* Gov't Mem., ECF No. 119; Gov't Suppl. Mem., ECF No. 127; Gov't Suppl. Reply, ECF No. 132.  The court heard arguments on March 28 and April 25, 2022.  *See* Mins., ECF Nos. 125, 133; Sentencing Tr., ECF No. 129.

**II.   DISCUSSION**

The first question is whether Mr. Gaston pleaded guilty to a crime punishable by a minimum prison term of ten years.  The statute Mr. Gaston admits he violated, 21 U.S.C. § 841(a)(1), "is most striking for what it does not say." *United States v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002) (en banc), *abrogated on other grounds as explained in United States v. Kirilyuk*, 29 F.4th 1128, 1140–41 (9th Cir. 2022).  It "does not specify who shall determine drug quantity or identify the appropriate burden of proof for these determinations." *Id.*  Given that

silence, the Ninth Circuit has held that "drug type and quantity are not elements of the offense under § 841." *United States v. Thomas*, 355 F.3d 1191, 1195 (9th Cir. 2004). So while drug type and quantity "must be charged in the indictment, submitted to the jury, subject to the rules of evidence, and proved beyond a reasonable doubt," *Buckland.* 289 F.3d at 568, defendants can plead guilty to violating § 841 without admitting which or how many drugs they distributed, *Thomas*, 355 F.3d at 1198; *see also, e.g.*, *United States v. Hunt*, 656 F.3d 906, 912 (9th Cir. 2011). It is the government's burden to seek and obtain "an explicit admission" that the violation involved a specific type and quantity of drugs. *Hunt*, 656 F.3d at 912 (quoting *Thomas*, 355 F.3d at 1199).

*Thomas* and *Hunt* show how these rules work. Both involve drug crime allegations very similar to those Mr. Gaston faces. In each case, the defendant pleaded guilty to violations of § 841(a)(1) without a plea agreement. *See Hunt*, 656 F.3d at 909; *Thomas*, 355 F.3d at 1193. In each case, the government alleged in the indictment that the quantity of drugs was larger than the threshold for a mandatory minimum ten-year sentence, and it read out those allegations at the plea hearing. *See Hunt*, 656 F.3d at 910; *Thomas*, 355 F.3d at 1199. And in each case, the defendant admitted the elements of an offense under § 841(a)(1). *See Hunt*, 656 F.3d at 909–10; *Thomas*, 355 F.3d at 1194. But in neither case did the defendant admit he had possessed or distributed a specific quantity of a particular drug. *See Hunt*, 656 F.3d at 909–10 (admissions of neither type nor quantity); *Thomas*, 355 F.3d at 1194 (no admission of quantity).

If these cases had gone to trial, the evidence might very well have proven the government's allegations. In *Hunt*, for example, the defendant had conceded in writing after a police interview that he had attempted to deliver a package with "1 kilo of coke" inside. 656 F.3d at 909. But the government did not obtain an "explicit admission" of drug quantity at the plea hearing, so it had not proven its type and quantity allegations "beyond a reasonable doubt." *Id.* at 911–13; *see also Thomas*, 355 F.3d at 1199. As a result, neither defendant's sentence could be increased based on unproven references to specific drug quantities or types. *See Hunt*, 656 F.3d at 913 ("Because Hunt did not admit that he attempted to possess cocaine, and because the government did not prove that fact to a jury beyond a reasonable doubt, that fact could not be

7

used to support an increase in the maximum statutory sentence Hunt faced."); *Thomas*, 355 F.3d at 1199, 1202 ("[W]e must look at what the defendant actually agreed to—that is, what was actually established beyond a reasonable doubt. Based on our review of the record, we conclude that *Thomas* did not admit to possessing more than 50 grams of cocaine base . . . . [W]e must remand with instructions to resentence Thomas based on an unspecified quantity of cocaine base." (citations and quotation marks omitted)).

This case fits the same mold. The government charged Mr. Gaston with distribution of more than 50 grams of methamphetamine in violation of § 841(a)(1); he pleaded guilty to that offense and thus admitted to knowing distribution of a controlled substance; but he carefully and specifically denied knowing what he had sold or how much, and the government did not object or press for an explicit admission of Mr. Gaston's knowledge of the drugs' quality, quantity, or purity. *See* Plea Tr. at 22–23. After the government repeated the elements of the crime, Mr. Gaston made clear he was not admitting the government could prove he "knew it was actual" methamphetamine. *Id.* at 22. He averred the government could prove only he "knew it was drugs." *Id.* His counsel emphasized similarly that the government "would not have to prove that he knew it was actual meth, just that it was meth or some other illicit substance." *Id.* at 23. The government agreed. "Whether it's, as they say, actual or a mixture of substance," the prosecutor explained, "that bears on the sentence that will be imposed, but it's not one of the elements of the substantive offense itself." *Id.* Mr. Gaston agreed "that's the way the element would be established at trial if the government could meet its burden." *Id.*

Mr. Gaston did later admit the government could prove beyond a reasonable doubt at trial that the bag he sold contained "217.7 grams of actual methamphetamine." *Id.* at 25–26. Under *Thomas*, this admission falls short of the necessary "explicit admission." In that case, the defendant did not dispute he had dropped a bag he knew contained more than 50 grams of narcotics. 355 F.3d at 1199. But he "made clear" at his plea hearing that he had "no present basis for knowing the weight of the cocaine base." *Id.* In his words, "[O]nce the bag fell out of my hand, I never seen it again." *Id.* His refusal to admit he had any present basis persuaded the circuit court that the government had not carried its burden to obtain the necessary "explicit

8

admission." *Id.* The situation in this case is equivalent: Mr. Gaston spoke in the past tense—he "knew it was drugs," but not "actual"—but he has not admitted to seeing the brown paper sack again. Plea Tr. at 22. At most he has admitted he cannot dispute the accuracy of the government's tests after the fact.

Unlike the dispute in *Thomas*, the question in this case is not grams or ounces. It is a question of purity: was the methamphetamine "actual" or a mixture? But that difference is not meaningful. Mr. Thomas admitted in effect that he knew his paper sack contained a controlled substance, but he did not admit to having any "present basis for knowing the weight of the cocaine base," 355 F.3d at 1199; Mr. Gaston did not admit he "knew it was actual"—only that "it was drugs," Plea Tr. at 22. If the government's not having obtained an explicit admission about the amount of cocaine base in *Thomas* meant it had not proven beyond a reasonable doubt that Mr. Thomas had possessed more than 50 grams of cocaine base, then the government's not having obtained an explicit admission about drug purity here means it has not proven beyond a reasonable doubt that Mr. Gaston distributed more than 50 grams of "actual" methamphetamine. The court therefore disagrees with the government's contention that Mr. Gaston admitted the substance he distributed was "actual methamphetamine." Sentencing Tr. at 17; Gov't Suppl. Reply at 2–3.

Finally, the court is not persuaded that Mr. Gaston admitted to possessing eight ounces of actual methamphetamine by acknowledging that the government was seeking, and that he potentially faced, a minimum sentence of ten years' imprisonment. *See* Plea Tr. at 16. The court explained potential prison sentences in conditional terms: "[I]t would appear that the 10-year mandatory minimum . . . would apply here. . . . Sentencing occurs in the future, and I'll talk more about that in a bit, but I'm just telling you what Congress has provided." *Id.* Both he and his counsel later made clear he was not admitting to distributing "actual" methamphetamine rather than a mixture. *See id.* at 22–23. The government agreed that distinction "bears on the sentence that will be imposed, but it's not one of the elements of the substantive offense itself." *Id.* at 23.

### III. CONCLUSION

The mandatory minimum sentence for violations of 21 U.S.C. § 841 involving more than 50 grams of actual methamphetamine does not apply to the charge against Mr. Gaston. That result is counterintuitive, given that Mr. Gaston has acknowledged the government's test results as accurate; but the Ninth Circuit's binding decisions in *Thomas* and *Hunt* compel this conclusion.

The court need not decide whether Mr. Gaston was entrapped in a sale of more than 50 grams of actual methamphetamine. Nor is it necessary to decide whether a district court may impose a sentence below the statutory minimum to remedy an entrapment. This order leaves those disputes unresolved. This order also does not resolve any dispute the parties might currently entertain about the contents of the presentencing report. *Cf. Thomas*, 355 F.3d at 1200 (discussing Federal Rule of Criminal Procedure 32). As the court discussed with the parties at hearing, they shall **meet and confer and within 14 days** file a joint status report addressing whether the court should now proceed to sentencing on the pending Presentence Investigation Report (PSR), ECF No. 55, or direct the preparation of a new PSR accounting for the court's ruling in this order. The joint status report shall also address any briefing schedule the parties' request prior to sentencing.

IT IS SO ORDERED.

DATED: April 27, 2022.

CHIEF UNITED STATES DISTRICT JUDGE